UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X

JOHANNA DIAZ, JONATHAN RODRIGUEZ,  :   Case No.:
ISREAL SANTANA, and HENRY GONZALEZ, on behalf  :
of themselves and all others similarly situated,  :   **CLASS AND COLLECTIVE**
    :   **ACTION COMPLAINT**
    Plaintiffs,  :
    - against -  :
    :
MICHIGAN LOGISTICS INC. d/b/a DILIGENT  :
DELIVERIES,  NORTHEAST LOGISTICS, INC. d/b/a  :
DILIGENT DELIVERIES, and PARTS AUTHORITY INC.,  :
    :
    Defendants.  :

------------------------------------------------------------------------ X

Plaintiffs Johanna Diaz, Jonathan Rodriguez, Isreal Santana, and Henry Gonzalez (collectively "Plaintiffs" or "New York Class Representatives"), on behalf of themselves and all others similarly situated, by and through their attorneys Shulman Kessler LLP, complaining of the Defendants Michigan Logistics Inc. d/b/a Diligent Deliveries, Northeast Logistics Inc. d/b/a Diligent Deliveries, and Parts Authority Inc. ("Defendants"), allege as follows:

## PRELIMINARY STATEMENT

1.     This lawsuit seeks to recover unpaid overtime compensation for Plaintiffs and their similarly situated co-workers who have worked for Defendants in the State of New York as delivery drivers.

2.     Defendants require their delivery drivers to deliver parts to their stores located throughout the State of New York as well as to other mechanics, including but not limited to gas stations and auto body shops, and require Plaintiffs work in excess of 40 hours per workweek.

3.      Defendants Michigan Logistics Inc. d/b/a Diligent Deliveries and Northeast Logistics Inc. d/b/a Diligent Deliveries operate a business that's primary purpose is to hire delivery drivers to businesses nationwide.

4.      Defendant Parts Authority, Inc. operates a business enterprise consisting twenty-eight auto parts stores throughout the State of New York.  Defendant Parts Authority Inc. shares its employees throughout its stores.  Defendant Parts Authority Inc.'s delivery drivers were all hired by Defendants Michigan Logistics Inc. d/b/a Diligent Deliveries and Northeast Logistics Inc. d/b/a Diligent Deliveries; however, the delivery drivers day to day employment was controlled Defendant Parts Authority Inc., who required the delivery drivers to report to various Parts Authority Inc. stores each workday in order to delivery necessary supplies.

5.      While employed by Defendants, Plaintiffs consistently worked over 40 hours per week without receiving premium overtime pay for all the hours they worked. Throughout the relevant period, it was Defendants' policy to deprive Plaintiffs of all of their earned overtime wages in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL" or "N.Y. Lab. Law").  In order to avoid paying Plaintiffs overtime premiums for all of the hours Plaintiffs worked in excess of 40 per workweek, Defendants misclassified their delivery drivers as exempt employees and paid them a biweekly salary.

6.      Defendants failed to track their delivery drivers' hours worked.

7.      Plaintiffs bring this action on behalf of themselves and all similarly situated current and former delivery drivers of Defendants pursuant to the FLSA.

8.      Plaintiffs also seek permission to give notice of this action pursuant to 29 U.S.C. § 216(b) to all persons who are presently, or have at any time during the 3 years immediately preceding the filing of this action, worked for Defendants as a delivery driver.

## JURISDICTION & VENUE

9.      Jurisdiction of the Court over this controversy is based upon 29 U.S.C. § 201, *et seq.*, 28 U.S.C. §§ 1331 and 1337 and the doctrine of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

10.      This Court has jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. § 1367.

11.      Defendants do business in Nassau, Suffolk, Kings, Queens, and Bronx Counties.

12.      Plaintiffs performed work for Defendants at their stores located in Nassau, Suffolk, Kings, Queens, and Bronx Counties.

13.      Accordingly, this action properly lies in the Eastern District of New York, pursuant to 28 U.S.C. § 1391.

## THE PARTIES

*Plaintiffs*

14.      Johanna Diaz is a resident of the County of Suffolk, State of New York.

15.      At all times relevant to the Complaint, Johanna Diaz was an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e), and N.Y. Lab. Law § 190(2).

16.      At all times relevant, Johanna Diaz was employed by Defendants as a delivery driver.

17.      Johanna Diaz has expressed her consent to make these claims against the Defendants by filing a written consent form, pursuant to 29 U.S.C. § 216(b).  (*See* Exhibit A, annexed hereto).

18.      Jonathan Rodriguez is a resident of the County of Suffolk, State of New York.

3

19.     At all times relevant to the Complaint, Jonathan Rodriguez was an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e), and N.Y. Lab. Law § 190(2).

20.     At all times relevant, Jonathan Rodriguez was employed by Defendants as a delivery driver.

21.     Jonathan Rodriguez has expressed his consent to make these claims against the Defendants by filing a written consent form, pursuant to 29 U.S.C. § 216(b).  (*See* Exhibit A, annexed hereto).

22.     Isreal Santana is a resident of the County of Suffolk, State of New York.

23.     At all times relevant to the Complaint, Isreal Santana was an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e), and N.Y. Lab. Law § 190(2).

24.     At all times relevant, Isreal Santana was employed by Defendants as a delivery driver.

25.     Isreal Santana has expressed his consent to make these claims against the Defendants by filing a written consent form, pursuant to 29 U.S.C. § 216(b).  (*See* Exhibit A, annexed hereto).

26.     Henry Gonzalez is a resident of the County of Suffolk, State of New York.

27.     At all times relevant to the Complaint, Henry Gonzalez was an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e), and N.Y. Lab. Law § 190(2).

28.     At all times relevant, Henry Gonzalez was employed by Defendants as a delivery driver.

29.     Henry Gonzalez has expressed his consent to make these claims against the Defendants by filing a written consent form, pursuant to 29 U.S.C. § 216(b).  (*See* Exhibit A, annexed hereto).

*Defendants*

30.     Upon information and belief, Defendant Michigan Logistics Inc. was and still is a foreign corporation organized and existing pursuant to the laws of the State of Texas, and doing business in the State of New York.

31.     Upon information and belief, Defendant Michigan Logistics Inc. maintains control, oversight, and direction over its operations and employment practices.

32.     Upon information and belief, Defendant Michigan Logistics Inc. does business as Diligent Deliveries.

33.     At all times hereinafter mentioned, Defendant Michigan Logistics Inc. was and still is an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and N.Y. Lab. Law § 190(3).

34.     Upon information and belief, Defendant Northeast Logistics Inc. was and still is a foreign corporation organized and existing pursuant to the laws of the State of Texas, and authorized to do business in the State of New York.

35.     Upon information and belief, Defendant Northeast Logistics Inc. maintains control, oversight, and direction over its operations and employment practices.

36.     Upon information and belief, Defendant Northeast Logistics Inc. does business as Diligent Deliveries.

37.     At all times hereinafter mentioned, Defendant Northeast Logistics Inc. was and still is an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and N.Y. Lab. Law § 190(3).

38.     Upon information and belief, Defendant Parts Authority Inc. was and still is a domestic corporation organized and existing pursuant to the laws of the State of New York.

5

39.     Upon information and belief, Defendant Parts Authority Inc. maintains control, oversight, and direction over its operations and employment practices.

40.     At all times hereinafter mentioned, Defendant Parts Authority Inc. was and still is an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and N.Y. Lab. Law § 190(3).

41.     Defendants Michigan Logistics Inc., Northeast Logistics Inc., and Parts Authority, Inc. constitute a unified operation.

42.     Defendants Michigan Logistics Inc., Northeast Logistics Inc., and Parts Authority, Inc. constitute a common enterprise.

43.     Defendants Michigan Logistics Inc., Northeast Logistics Inc., and Parts Authority, Inc. have interrelated operations.

44.     Defendants Michigan Logistics Inc., Northeast Logistics Inc., and Parts Authority, Inc. have common management.

45.     Defendants Michigan Logistics Inc., Northeast Logistics Inc., and Parts Authority, Inc. have a centralized control of labor relations.

46.     Defendants Michigan Logistics Inc., Northeast Logistics Inc., and Parts Authority, Inc. have common ownership.

47.     Defendants Michigan Logistics Inc. and Northeast Logistics Inc. hire employees who are supervised by Defendant Parts Authority, Inc.

48.     Defendant Parts Authority, Inc. directs the day to day work of the delivery drivers who are hired by Defendants Michigan Logistics Inc. and Northeast Logistics Inc.

49.     Defendants Michigan Logistics Inc., Northeast Logistics Inc., and Parts Authority, Inc. share employees.

50.     Defendants Michigan Logistics Inc., Northeast Logistics Inc., and Parts Authority, Inc. commingled funds with each other.

51.     Defendants Michigan Logistics Inc., Northeast Logistics Inc., and Parts Authority, Inc. share the same physical addresses in the State of New York.

52.     Defendants Michigan Logistics Inc., Northeast Logistics Inc., and Parts Authority, Inc. constituted a single employer.

53.     Defendants Michigan Logistics Inc., Northeast Logistics Inc., and Parts Authority, Inc. constituted an integrated enterprise.

54.     All of Defendant Parts Authority, Inc.'s store locations are advertised as a single integrated enterprise on Defendant's website at: http://www.partsauthority.com/index.php/locations.

55.     Defendant Michigan Logistics Inc. employed employees, including Plaintiffs herein, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s)(A)(i).

56.     Defendant Northeast Logistics Inc. employed employees, including Plaintiffs herein, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s)(A)(i).

57.     Defendant Parts Authority, Inc. employed employees, including Plaintiffs herein, who regularly engaged in commerce or in the production of goods for commerce or in handling,

selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s)(A)(i).

58.     Defendant Michigan Logistics Inc.'s annual gross volume of sales made or business done is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

59.     Defendant Northeast Logistics Inc.'s annual gross volume of sales made or business done is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

60.     Defendant Parts Authority, Inc.'s annual gross volume of sales made or business done is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

61.     Defendants' annual gross volume of sales made or business done is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii)

62.     At all times hereinafter mentioned, the activities of the Defendant Michigan Logistics Inc. constituted an "enterprise" within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

63.     At all times hereinafter mentioned, the activities of the Defendant Northeast Logistics Inc. constituted an "enterprise" within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

64.     At all times hereinafter mentioned, the activities of the Defendant Parts Authority, Inc. constituted an "enterprise" within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

65.     At all times hereinafter mentioned, the activities of the Defendants constituted an "enterprise" within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

66. At all times hereinafter mentioned, Defendants employed employees, including Plaintiffs herein, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s).

67. At all relevant times, Defendants maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

68. Defendants applied the same employment policies, practices, and procedures to all delivery drivers throughout the State of New York, including policies, practices, and procedures with respect to payment of overtime compensation.

## FLSA COLLECTIVE ACTION CLAIMS

69. Plaintiffs bring the First Cause of Action, pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of themselves and all similarly situated persons who work or have worked for Defendants as a delivery drivers within the last 3 years and who elect to opt-in to this action.

70. Upon information and belief, there are approximately more than 50 current and former delivery drivers that are similarly situated to Plaintiffs who were denied overtime compensation.

71. Plaintiffs represent other delivery drivers, and are acting on behalf of Defendants current and former delivery drivers' interests as well as their own interests in bringing this action.

72. Defendants unlawfully required Plaintiffs and all individuals employed as delivery drivers to work in excess of 40 hours per week without paying them overtime compensation at a rate of at least 1 and ½ times their regular hourly rate.

73.     Plaintiffs seek to proceed as a collective action with regard to the First Cause of

Action, pursuant to 29 U.S.C. § 216(b) on behalf of themselves and the following class of persons:

> All delivery drivers who are currently or have been employed by the
> Defendants in New York State (hereinafter referred to as the "FLSA
> Collective") at any time during the 3 years prior to the filing of their
> respective consent forms (hereinafter referred to as the "Collective
> Period").

74.     Defendants were aware or should have been aware that the law required it to pay

non-exempt employees, including Plaintiffs and the FLSA Collective, an overtime premium of 1

and ½ times their regular rate of pay for all work-hours Defendants suffered or permitted them to

work in excess of 40 per workweek.  Upon information and belief, Defendants applied the same

unlawful policies and practices to their delivery drivers throughout the State of New York.

75.     The FLSA Collective is readily identifiable and locatable through the use of the

Defendants' records.  The FLSA Collective should be notified of and allowed to opt-in to this

action, pursuant to 29 U.S.C. § 216(b).  Unless the Court promptly issues such a notice, the FLSA

Collective, who have been unlawfully deprived of overtime pay in violation of the FLSA, will be

unable to secure compensation to which they are entitled, and which has been unlawfully withheld

from them by Defendants.

<u>**FEDERAL RULE OF CIVIL PROCEDURE RULE 23**</u>
<u>**NEW YORK CLASS ALLEGATIONS**</u>

76.     Plaintiffs bring the Second, Third and Fourth Causes of Action on their own behalf

and as a class action, pursuant to Fed R. Civ. P. 23(a) and (b), on behalf of the following class of

persons:

> All delivery drivers who are currently, or have been employed by
> the Defendants, in the State of New York at any time during the 6
> years prior to the filing of this Complaint to the entry of the

10

judgment in the case (hereinafter referred to as the "New York Class" and the "New York Class Period," respectively.)

77.     The persons in the New York Class are so numerous that joinder of all members is impracticable.  Although, the precise number of such persons is unknown, and facts on which the calculation of that number can be based are presently within the sole control of Defendants.

78.     Upon information and belief, the size of the New York Class is at least 100 individuals.

79.     The Second and Third Causes of Action are properly maintainable as a class action under Fed. R. Civ. Pro. 23(b)(3).  There are questions of law and fact common to the New York Class that predominate over any questions solely affecting individual members of the New York Class, including but not limited to:

a.      whether the Defendants failed to keep accurate time records for all hours worked by the New York Class Representatives and the New York Class;

b.      what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records;

c.      whether the Defendants failed to pay proper compensation to New York Class Representatives and the New York Class for all work-hours in excess of 40 per workweek in violation of and within the meaning of the N.Y. Lab. Law Article 6, §§ 190 *et seq.* and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142;

d.      whether the Defendants unlawfully deducted money from the wages of the New York Class Representatives and the New York Class in violation of N.Y. Lab. Law § 193(1);

e.      whether Defendants failed to furnish the New York Class Representatives and New York Class with an accurate statement of, *inter alia*, wages, hours worked, and rates paid as required by N.Y. Lab. Law § 195;

f.      whether Defendants failed to furnish the New York Class Representatives and New York Class with the annual notice required by N.Y. Lab. Law § 195;

11

g.   the nature and extent of New York Class-wide injury and the appropriate measure of damages sustained by the New York Class Representatives and the New York Class;

h.   whether Defendants acted willfully or with reckless disregarding in its failure to pay the New York Class Representatives and the New York Class; and

i.   the nature and extent of class-wide injury and the measure of damages for those injuries.

80.   The New York Class Representatives fairly and adequately protect the interests of the New York Class and have no interests antagonistic to the class.  The named Plaintiffs are represented by attorneys who are experienced and competent in both class litigation and employment litigation.

81.   A class is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where an individual plaintiff lacks the financial resources to vigorously prosecute a lawsuit in federal court against the corporate defendant.  The damages sustained by individual class members are small, compared to the expense and burden of individual prosecution of this litigation.  Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

82.   Further, the New York Class Representatives and the New York Class have been equally affected by the Defendants' failure to pay proper wages.  Moreover, members of the New York Class still employed by the Defendants may be reluctant to raise individual claims for fear of retaliation.

83.   Defendants have acted or refused to act on grounds generally applicable to the New York Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class was a whole.

12

84.     Plaintiffs' claims are typical of those of the New York Class.  Plaintiffs and the other New York Class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning the failure to pay proper wages and the failure to keep adequate records.  Plaintiffs' job duties are typical of those of the class members.

85.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  The members of the New York Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures.  Although the relative damages suffered by individual members of the New York Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

## CLASS-WIDE FACTUAL ALLEGATIONS

86.     Plaintiffs and the members of the FLSA Collective and New York Class (collectively "Class Members") have been victims of Defendants' common policy and plan that has violated their rights under the FLSA by requiring delivery drivers to work in excess of 40 hours per week and denying them overtime compensation for all overtime hours worked. At all times relevant, Defendants' unlawful policy and pattern or practice has been willful.

87.     All of the work performed by Class Members was assigned by Defendants and/or Defendants were aware of all the overtime work that Plaintiffs and Class Members performed.

88.     Upon information and belief, Defendants have a policy and pattern or practice to require Plaintiffs and Class Members to work in excess of 40 hours per week.

89.     Defendants failed to pay Plaintiffs and Class Members time and one half for all hours worked over 40 in a workweek in violation of the FLSA.

90.     Defendants unlawfully deducted money from Plaintiffs and Class Members' wages.

91.     Defendants failed to furnish Plaintiffs and Class Members with an accurate statement of, *inter alia*, wages, hours worked, and rates paid as required by NYLL.

92.     Defendants failed to furnish Plaintiffs and Class Members with the annual notice required by NYLL.

93.     As part of its regular business practice, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy that violates the FLSA.  Defendants' policy and pattern or practice includes but is not limited to:

a.     Willfully failing to record all of the time that its employees, including Plaintiffs and Class Members, worked for the benefit of Defendants;

b.     Willfully failing to keep payroll records as required by the FLSA and NYLL;

c.     Willfully failing to pay its employees, including Plaintiffs and Class Members, overtime wages for all of the hours that they worked in excess of 40 per workweek.

94.     Defendants were or should have been aware that the FLSA required it to pay their delivery drivers premium overtime pay for all hours worked in excess of 40 per week.

95.     Defendants' failure to pay Plaintiffs and Class Members overtime wages for their work in excess of 40 hours per week was willful, intentional, and in bad faith.

96.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

14

## INDIVIDUAL FACTUAL ALLEGATIONS

*Johanna Diaz*

97.     Johanna Diaz was employed by Defendants from in or about April 2014 until in or about October 2014 as a delivery driver.

98.     Johanna Diaz was an employee of Defendants, working under their direct supervision.

99.     Johanna Diaz reported to various stores for Defendants, including but not limited to: Defendants' Bohemia store, located at 1385 Lakeland Avenue, Bohemia, New York 11716; Defendants' Hauppauge store, located at 590 Old Willets Path, Hauppauge, New York 11788; Defendants' Bay Shore store, located at 550 Pine Aire Drive, Bay Shore, New York 11706; Defendants' Bellmore store, located at 2121 Bellmore Avenue, Bellmore, New York 11710; Defendants' Farmingdale store, located at 14 Allen Street, Farmingdale, New York 11735; Defendants' Bronx store, located at 1601 Bronxdale Avenue, Bronx, New York 10462; Defendants' Jamaica store, located at 148-36 Guyrbrewer Road, Jamaica, New York 11434; Defendants' Mt. Vernon store, located at 544 South Fourth Avenue, Mt. Vernon, New York 10550; Defendants' Amityville store, located at 605 Albany Avenue, Amityville, New York 11701; and Defendants' Bellport store, located at 11 Farber Drive, Unit E, Bellport, New York 11713.

100.     Throughout Johanna Diaz's employment for Defendants, she was required to report to work from approximately 8:00 a.m. until approximately 6:00 p.m. every Monday through Friday, and from approximately 8:00 a.m. until approximately 3:00 p.m. every Saturday.

101.     At all times hereinafter mentioned, Johanna Diaz was required to be paid overtime pay at the statutory rate of 1 and ½ her regular rate of pay after she worked 40 hours in a workweek.

15

102.   During most workweeks between April 2014 and October 2014, Johanna Diaz worked more than 55 hours per week.

103.   Defendants failed to compensate Johanna Diaz for all of the time worked in excess of 40 hours per week at a rate of at least 1 and ½ times her regular hourly rate, throughout the entire term of her employment with Defendant.

104.   Defendants made unlawful deductions from Johanna Diaz's wages of two dollars per workday for "administration fee" in order to offset Defendants' "compliance and administration" costs.

105.   Defendants failed to furnish Johanna Diaz with an accurate statement of wages listing hours worked, rates paid, gross wages, allowances and deductions taken, and net wages paid.

106.   Upon information and belief, Defendants did not keep accurate records of hours worked by Johanna Diaz.

**Jonathan Rodriguez**

107.   Jonathan Rodriguez was employed by Defendants from in or about April 2013 until in or about November 2013 as a delivery driver.

108.   Jonathan Rodriguez was an employee of Defendants, working under their direct supervision.

109.   Jonathan Rodriguez reported to various stores for Defendants, including but not limited to: Defendants' Bohemia store, located at 1385 Lakeland Avenue, Bohemia, New York 11716; Defendants' Hauppauge store, located at 590 Old Willets Path, Hauppauge, New York 11788; Defendants' Bay Shore store, located at 550 Pine Aire Drive, Bay Shore, New York 11706; Defendants' Bellmore store, located at 2121 Bellmore Avenue, Bellmore, New York 11710; Defendants' Farmingdale store, located at 14 Allen Street, Farmingdale, New York 11735;

16

Defendants' Amityville store, located at 605 Albany Avenue, Amityville, New York 11701; Defendants' Hicksville store, located at 190 Miller Place, Hicksville, New York 11801; Defendants' Massapequa store, located at 679 Broadway, Massapequa, New York 11758; Defendants' Plainview store, located at 64 Newtown Plaza, Plainview, New York 11803; and Defendants' Bellport store, located at 11 Farber Drive, Unit E, Bellport, New York 11713.

110.    Throughout Jonathan Rodriguez employment for Defendants, he was required to report to work from approximately 8:00 a.m. until approximately 6:00 p.m. every Monday through Friday, and from approximately 8:00 a.m. until approximately 3:00 p.m. every Saturday.

111.    At all times hereinafter mentioned, Jonathan Rodriguez was required to be paid overtime pay at the statutory rate of 1 and ½ his regular rate of pay after he worked 40 hours in a workweek.

112.    During most workweeks between April 2013 and November 2013, Jonathan Rodriguez worked more than 55 hours per week.

113.    Defendants failed to compensate Jonathan Rodriguez for all of the time worked in excess of 40 hours per week at a rate of at least 1 and ½ times his regular hourly rate, throughout the entire term of his employment with Defendant.

114.    Defendants made unlawful deductions from Jonathan Rodriguez's wages of two dollars per workday for "administration fee" in order to offset Defendants' "compliance and administration" costs.

115.    Defendants failed to furnish Juan Rodriguez with an accurate statement of wages listing hours worked, rates paid, gross wages, allowances and deductions taken, and net wages paid.

116.    Upon information and belief, Defendants did not keep accurate records of hours worked by Jonathan Rodriguez.

*Isreal Santana*

117.     Isreal Santana was employed by Defendants from in or about January 2013 until in or about January 2014 as a delivery driver.

118.     Isreal Santana was an employee of Defendants, working under their direct supervision.

119.     Isreal Santana reported to various stores for Defendants, including but not limited to: Defendants' Bay Shore store, located at 550 Pine Aire Drive, Bay Shore, New York 11706; Defendants' Farmingdale store, located at 14 Allen Street, Farmingdale, New York 11735; Defendants' Amityville store, located at 605 Albany Avenue, Amityville, New York 11701; Defendants' Hicksville store, located at 190 Miller Place, Hicksville, New York 11801; Defendants' Roslyn store, located at 25 Lumber Road, Roslyn, New York 11576; and Defendants' New Hyde Park store, located at 1605 Jericho Turnpike, New Hyde Park, New York 11040.

120.     Throughout Isreal Santana employment for Defendants, he was required to report to work from approximately 8:00 a.m. until approximately 6:00 p.m. every Monday through Friday, and from approximately 9:00 a.m. until approximately 1:00 p.m. every Saturday.

121.     At all times hereinafter mentioned, Isreal Santana was required to be paid overtime pay at the statutory rate of 1 and ½ his regular rate of pay after he worked 40 hours in a workweek.

122.     During most workweeks between approximately January 2013 and January 2014, Isreal Santana worked more than 50 hours per week.

123.     Defendants failed to compensate Isreal Santana for all of the time worked in excess of 40 hours per week at a rate of at least 1 and ½ times his regular hourly rate, throughout the entire term of his employment with Defendant.

124.    Defendants made unlawful deductions from Isreal Santana's wages of two dollars per workday for an "administration fee" in order to offset Defendants' "compliance and administration" costs.

125.    Defendants failed to furnish Isreal Santana with an accurate statement of wages listing hours worked, rates paid, gross wages, allowances and deductions taken, and net wages paid.

126.    Upon information and belief, Defendants did not keep accurate records of hours worked by Isreal Santana.

**Henry Gonzalez**

127.    Henry Gonzalez was employed by Defendants from in or about November 2013 until in or about September 2014 as a delivery driver.

128.    Henry Gonzalez was an employee of Defendants, working under their direct supervision.

129.    Henry Gonzalez reported to various stores for Defendants, including but not limited to: Defendants' Clearway store, located at 211-10 Hillside Avenue, Queens, New York 11427; Defendants' Bohemia store, located at 1385 Lakeland Avenue, Bohemia, New York 11716; Defendants' Corona store, located at 126-02 Northern Boulevard, Corona, New York 11368; Defendants' Springfield Gardens store, located at 221-11 Merrick Boulevard, Springfield Gardens, New York 11413; Defendants' Rockville Centre store, located at 495 Merrick Road, Rockville Centre, New York 11570; Defendants' Hauppauge store, located at 590 Old Willets Path, Hauppauge, New York 11788; Defendants' Bay Shore store, located at 550 Pine Aire Drive, Bay Shore, New York 11706; Defendants' Bellmore store, located at 2121 Bellmore Avenue, Bellmore, New York 11710; Defendants' Farmingdale store, located at 14 Allen Street, Farmingdale, New York 11735; Defendants' Amityville store, located at 605 Albany Avenue,

Amityville, New York 11701; Defendants' Hempstead store, located at 4 Laurel Avenue, Hempstead, New York 11550; Defendants' Hicksville store, located at 190 Miller Place, Hicksville, New York 11801; Defendants' Massapequa store, located at 679 Broadway, Massapequa, New York 11758; Defendants' Rego Park store, located at 8940 Metropolitan Avenue, Rego Park, New York 11374; Defendants' Long Island City store, located at 21-17 37th Avenue, Long Island City, New York 11101; Defendants' Bayside store, located at 3901 170th Street, Flushing, New York 11358; Defendants' Williamsburg store, located at 33 Franklin Avenue, Williamsburg, New York 11205; Defendants' Plainview store, located at 64 Newtown Plaza, Plainview, New York 11803; and Defendants' Bellport store, located at 11 Farber Drive, Unit E, Bellport, New York 11713.

130.    Throughout Henry Gonzalez's employment for Defendants, he was required to report to work from approximately 8:00 a.m. until approximately 6:00 p.m. every Monday through Saturday.

131.    At all times hereinafter mentioned, Henry Gonzalez was required to be paid overtime pay at the statutory rate of 1 and ½ his regular rate of pay after he worked 40 hours in a workweek.

132.    During most workweeks between November 2013 and September 2014, Henry Gonzalez worked more than 55 hours per week.

133.    Defendants failed to compensate Henry Gonzalez for all of the time worked in excess of 40 hours per week at a rate of at least 1 and ½ times his regular hourly rate, throughout the entire term of his employment with Defendant.

134.    Defendants made unlawful deductions from Henry Gonzalez's wages of two dollars per workday for "administration fee" in order to offset Defendants' "compliance and

administration" costs.

135. Defendants failed to furnish Henry Gonzalez with an accurate statement of wages listing hours worked, rates paid, gross wages, allowances and deductions taken, and net wages paid.

136. Upon information and belief, Defendants did not keep accurate records of hours worked by Henry Gonzalez.

**FIRST CAUSE OF ACTION**
**FLSA – Overtime Wages**
**(Brought on behalf of Plaintiffs and the FLSA Collective)**

137. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

138. Plaintiffs and members of the FLSA Collective are non-exempt employees entitled to be paid overtime compensation for all overtime hours worked.

139. Defendants employed Plaintiffs and members of the FLSA Collective for workweeks longer than 40 hours and willfully failed to compensate Plaintiffs for all of the time worked in excess of 40 hours per week, at a rate of at least 1 and ½ times their regular hourly rate, in violation of the requirements of Section 7 of the FLSA, 29 U.S.C. § 207(a)(1).

140. Plaintiffs have expressed their consent to make these claims against the Defendants by filing a written consent form, pursuant to 29 U.S.C. § 216(b).

141. Defendants failed to make a good faith effort to comply with the FLSA with respect to its compensation to Plaintiffs and the FLSA Collective.

142. Because Defendants' violations of the FLSA were willful, a 3 year statute of limitations applies, pursuant to 29 U.S.C. § 255.

143. As a consequence of the willful underpayment of wages, alleged above, Plaintiffs have incurred damages thereby and Defendants are indebted to them in the amount of the unpaid

overtime compensation, together with interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### NYLL – Unpaid Overtime
**(Brought on behalf of Plaintiffs and the members of the New York Class)**

144.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

145.    Defendants employed Plaintiffs and members of the New York Class for workweeks longer than 40 hours and willfully failed to compensate Plaintiffs and the New York Class for all of the time worked in excess of 40 hours per week, at a rate of at least 1 and ½ times their regular hourly rate, in violation of the requirements of NYLL.

146.    By the course of conduct set forth above, Defendants have violated N.Y. Lab. Law § 650, *et seq.*; 12 N.Y.C.R.R. Part 142-2.2.

147.    Defendants failed to keep, make, preserve, maintain and furnish accurate records of time worked by Plaintiffs and Class Members.

148.    Defendants have a policy and practice of refusing to pay overtime compensation for all hours worked to Plaintiffs and the New York Class.

149.    Defendants' failure to pay overtime compensation to Plaintiffs and the New York Class was willful within the meaning of N.Y. Lab. Law § 663.

150.    As a consequence of the willful underpayment of wages, alleged above, Plaintiffs have incurred damages thereby and Defendants are indebted to them in the amount of the unpaid overtime compensation and such other legal and equitable relief due to Defendants' unlawful and willful conduct, as the Court deems just and proper.

151. Plaintiffs seek recovery of liquidated damages, attorneys' fees, and costs to be paid by Defendants as provided by the NYLL.

### THIRD CAUSE OF ACTION
### NYLL – Unlawful Wage Deduction
### (Brought on behalf of Plaintiffs and the members of the New York Class

152. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

153. Defendants knowingly, willfully, and intentionally violated NYLL Article 6, § 193 when Defendants deducted two dollars per workday from Plaintiffs wages for "administrative fees" in order to offset Defendants' expenses for "compliance and administrative" purposes, this internal policy constituted an unlawful reduction of Plaintiffs' wages.

154. Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from defendants their full wages, reasonable attorneys' fees, costs, liquidated damages, and pre-judgment and post-judgment interest.

### FOURTH CAUSE OF ACTION
### NYLL – Notice and Record-Keeping Requirement Violation
### (Brought on behalf of Plaintiffs and the members of the New York Class)

155. Plaintiffs reallege and incorporate by reference herein all allegations in all preceding paragraphs.

156. Defendants failed to supply Plaintiffs and members of the New York Class notice as required by N.Y. Lab. Law § 195, in English or in the language identified by Plaintiffs as their primary language, containing Plaintiffs' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with N.Y. Lab. Law § 191; the name of the employer; any "doing business as" names used by the

23

employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

157.    Defendants failed to supply Plaintiffs and members of the New York Class with an accurate statement of wages as required by N.Y. Lab. Law § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

158.    Due to Defendants' violations of N.Y. Lab. Law § 195, Plaintiffs and members of the New York Class are each entitled to damages of $50 for each workweek that Defendants failed to provide a wage notice, or a total of $2,500 per class member, and damages of $100 for each workweek that Defendants failed to provide accurate wage statements, or a total of $2,500 per class member, as provided for by N.Y. Lab. Law § 198, reasonable attorneys' fees, costs, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, seek for the following relief:

A.    That, at the earliest possible time, Plaintiffs be allowed to give notice to the FLSA Collective, or that the Court issue such notice, to all persons who are presently, or have at any time during the 3 years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, been employed by Defendants as delivery drivers, or

24

similarly situated positions.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.       Unpaid overtime pay and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor regulations;

C.       Unpaid overtime pay and liquidated damages permitted by law pursuant to the NYLL;

D.       Statutory damages, as provided for by N.Y. Lab. Law § 198, for Defendants' violations of the notice and recordkeeping requirements pursuant to N.Y. Lab. Law § 195;

E.       Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

F.       Designation of Plaintiffs as representatives of the Rule 23 Class, and counsel of record as Class Counsel;

G.       Pre-judgment interest and post-judgment interest as provided by law;

H.       Appropriate equitable and injunctive relief to remedy violations, including but not necessarily limited to an order enjoining Defendants from continuing their unlawful practices;

I.       Attorneys' fees and costs of the action;

J.       Issuance of a declaratory judgment that the practices complained of in this action are unlawful under N.Y. Lab. Law § 190 *et seq.*;

K.       An injunction requiring Defendants to cease the unlawful activity described herein pursuant to N.Y. Lab. Law § 190 *et seq.*;

L.       Appropriate monetary relief for lost wages, as provided for by FLSA § 216(b) and NYLL § 215(d);

M.      Liquidated damages relating to lost wages, as provided for by FLSA § 216(b) and

NYLL § 215(d);

N.      Reasonable incentive awards for Plaintiffs to compensate them for the time they

spent attempting to recover wages for the Class and for the risks they took in doing so; and

O.      Such other relief as this Court shall deem just and proper.

Dated: Melville, New York
       March 18, 2015

                                                   Respectfully submitted,

                                                   By:   _/s/ Troy L. Kessler_____
                                                         Troy L. Kessler

                                                   **SHULMAN KESSLER LLP**
                                                   Troy L. Kessler
                                                   Marijana F. Matura
                                                   Garrett Kaske
                                                   510 Broadhollow Road, Suite 110
                                                   Melville, New York 11747
                                                   Telephone: (631) 499-9100
                                                   *Attorneys for Plaintiffs and the*
                                                   *Putative FLSA Collective and*
                                                   *New York Class*