# EXHIBIT A



## OWNER OPERATOR AGREEMENT

This OWNER OPERATOR AGREEMENT ("AGREEMENT") is entered into this ___2 1___ day of __August__, by and between __Henry Gonzalez__ (the "OPERATOR") and Northeast Logistics, Inc. ("DILIGENT"). OPERATOR's trade or business name is _____.

### WITNESSETH:

WHEREAS, DILIGENT is engaged in the delivery logistics business, including the arranging and brokering of delivery and cartage service jobs on behalf of its clients (hereafter referred to as "client engagements");

WHEREAS, DILIGENT also is called upon by customers, from time to time, to contract with a delivery business that can transport items designated by the customer (hereinafter referred to as "Items"); and

WHEREAS, Operator (i) is engaged in an independently established delivery business, (ii) is willing, from time to time, at such times as Operator shall choose and elect, to perform delivery services for customers of DILIGENT as an Owner Operator and (iii) has provided DILIGENT with a proposal setting forth terms under which it is willing to provide such services.

NOW, THEREFORE, it is mutually agreed between the parties as follows:

1.    **Owner Operator Relationship.**    The parties agree and acknowledge that Operator's relationship with DILIGENT hereunder is that of an Owner Operator, and any and all services provided by Operator hereunder shall be provided in that capacity. Neither Operator nor any of its employees or servants shall in any way or for any purpose be considered an agent, servant, employee, partner or co-venturer of DILIGENT or be deemed to hold any relationship with DILIGENT other than that of an Owner Operator. All of Operator's invoices, business cards, correspondence, e-mail messages and other documents shall identify Operator as an Owner Operator.

2.    **Term of Agreement.** The term of this Agreement shall commence as of the day it is signed by DILIGENT and continue for the following 12-month period or until terminated in writing by either party as provided herein. This Agreement will be extended for additional 12-month periods unless either party hereto advises the other in writing prior to the end of a term that the Agreement not be extended.

3.    **Operator's Services.**

(a)    During the term of this Agreement, DILIGENT may, from time to time, inform Operator of a client-engagement opportunity. Operator shall have the right to decline or accept any such opportunity.

108 Northeast Logistics Diligent O O Agreement Updated 2/12 wo notary.doc
Copyright ©Norlyn Enterprises, Inc. All rights reserved. Duplication in part or whole in any form whatsoever is prohibited.

_HG_ OO Initials    _____ Diligent Initials



(b)      If Operator elects to accept an engagement, Operator shall be obligated to complete the engagement. Operator shall control and determine all matters relating to the performance of an engagement, such as selecting the routes to be taken.  Operator will not receive any training or instructions from DILIGENT.  DILIGENT will not dictate the time of performance or the time or hours during which an opportunity is to be performed. All such determinations shall be arrived at between Operator and the customer.

(c)      Operator need not perform any services hereunder personally, but may hire or engage others to perform any or all such services on Operator's behalf.  Operator shall be solely responsible for the direction and control of Operator's employees, agents and servants, including (i) hiring, (ii) firing, (iii) supervising, (iv) setting wages, hours of work, performance standards and routes of travel, (v) providing all necessary tools or assistance, (vi) paying wages and (vii) resolving grievances.  DILIGENT shall have no right to request Operator to discontinue the use of any particular employee, agent or servant.  Operator acknowledges sole responsibility for ensuring that it and its employees, agents and servants comply fully with all state, federal, county, municipal or other laws, and regulations, and that a failure to so comply shall be a breach of this Agreement. DILIGENT is not obligated to provide tools and equipment to Operator necessary to perform opportunities that are accepted, this responsibility is always that of Operator.

(d)      Operator's failure to complete an accepted engagement shall constitute a breach of this Agreement.

**4.      Availability of Operator.**  Operator, as an Owner Operator, retains the right to work for others and to hold itself out to the public generally as an Owner Operator. It is understood that Operator intends to make itself available to furnish services under this Agreement from time to time, but only at such times as Operator, in its discretion, shall elect.

**5.      Operator Fees.**  DILIGENT agrees to pay and Operator agrees to accept as its entire compensation for completing a client engagement a fixed sum as determined in accordance with the attached Addendum A, which amount is the result of arms' length negotiation between both parties.  Both DILIGENT and Operator have the right to renegotiate Operator's fees at any time, provided that any change shall not be effective until memorialized in writing and signed by both parties.

(a) **Invoice.**  DILIGENT shall pay Operator for a completed client engagement within thirty (30) days of receipt from Operator of an invoice bearing Operator's signature that identifies the engagement and the contract fee.  If payment from DILIGENT is due to Operator under the terms of this Agreement, and such payment is not made in a timely or accurate manner, Operator shall have the right to seek proper payment either through arbitration (under Section 17) or by any other legal means contemplated by this Agreement.

(b) **Added Risks.**  Operator understands and agrees that while from time to time circumstances such as traffic or shipment relay delays, adverse weather, and other potentially

Copyright ©Norlyn Enterprises, Inc. All rights reserved. Duplication in part or whole in any form whatsoever is prohibited.

_____ OO Initials      _____ Diligent Initials

cost increasing circumstances will occur, Operator will not receive any additional contract payment for such occurrences, but in all cases will be solely responsible for any additional costs resulting from such risks.

(c)    Payment.    Payments to Operator will be by check issued to Operator in his/her/its business or trade name.

6.    No Benefits.    Operator acknowledges that neither it nor its officers, directors, agents, servants or employees are entitled to, and all agree not to assert any claim to, any employee benefits offered by DILIGENT to its employees. No Unemployment Compensation Insurance. Operator understands that he/she/it is not entitled to apply for and to receive Unemployment Compensation Benefits. Operator understands and agrees that Unemployment Insurance Benefits can be obtained by Operator if either Operator or some other entity (but not DILIGENT) provides such Unemployment Insurance Benefits.

7.    Taxes.    The relationship of Operator and DILIGENT at all time is that of Owner Operators.    Operator fully understands that neither federal, state or local income taxes, nor payroll taxes of any kind, including but not limited to FICA and FUTA, will be withheld or paid by DILIGENT on behalf of Operator for monies paid pursuant to the terms of this Agreement. Operator agrees (i) to pay to the United States, and to the states of New Jersey, New York, Connecticut, Pennsylvania and Rhode Island all self-employment and other applicable taxes, including sales taxes, income taxes and estimates thereof, and (ii) to maintain sufficient records to verify that Operator has satisfied its obligation to pay such taxes.

Operator hereby indemnifies and agrees to hold harmless DILIGENT against any claim, cost, penalty, interest, loss or expense (including attorneys' fees) related to Operator's failure to discharge its obligations under this Paragraph 7.    Operator is independently engaged in the business of delivering items of personal property. Operator agrees that as of the effective date of this Agreement that Operator is obligated to and will at the next applicable filing period, file with the Internal Revenue Service of the United States, a schedule of expenses for the business operated by Operator. Operator further agrees that on the effective date of this Agreement or within a reasonable time thereafter that Operator has or will establish an account with the department of revenue and with all other applicable state agencies for Operators business for the payment of all state taxes normally paid by employers and businesses. Additionally, Operator has registered for a business identifier number from the states of New Jersey, New York, Connecticut, Pennsylvania and Rhode Island and, as of the effective date contract services are rendered by Operator under this Agreement, Operator maintains a separate set of books or records reflecting all items of income and expenses for the business conducted by Operator.

8.    Operator's Responsibilities;

(a)    Operator is responsible for providing a safe vehicle and other equipment that, in Operator's sole judgment, is suitable for completing a client engagement, such as

_H. G_OO Initials    _N_Diligent Initials

**DILIGENT**
**DELIVERY SYSTEMS**

shipment-handling equipment, radio equipment, beepers and any other type of equipment that Operator may wish to utilize in communicating with DILIGENT or its customers or in handling their shipments

      (b)    Operator shall be solely responsible for the operation of all equipment used in completing a client engagement, which shall include, but not be limited to (i) the selection of drivers, helpers; places of repair, stopping, parking, replacement and maintenance; and (ii) the purchase of fuel, equipment, insurance, parts and accessories.

      (c)    Operator agrees to create, maintain and make available to DILIGENT such documents, and to grant DILIGENT such rights, as are required for DILIGENT's compliance with all applicable state, federal, county, municipal and other laws and regulations, including but not limited to, driver-qualification files, equipment-inspection reports, hours-of-service documentation and vehicle-condition reports. DILIGENT intends to comply fully with all such requirements. DILIGENT also agrees to provide to Operator copies of any document required to be maintained by DILIGENT under this Agreement.

      (d)    Costs and Expenses. Operator shall be responsible for all costs and expenses incident to the performance of a client engagement, including, but not limited to, (i) registration fees, (ii) license fees, (iii) inspection fees, (iv) insurance, (v) tolls or fines, (vi) maintenance and repairs, (vii) personal property and sales taxes and (viii) fuel, oil and tires.

      (e)    Insurance. Operator, at its expense, shall keep in full force and effect, during the term of this Agreement, Liability insurance covering the ownership, maintenance, use and operation of any motor vehicle used by Operator in the performance of its services hereunder, as more specifically set forth in Paragraph 9 hereof.

      (f)    Independence. Operator and DILIGENT will, at all times, maintain the separate status and operation or their respective businesses.

9.    **Operator's Insurance.**

      (a)    For trucks with a gross weight of up to 10,000 pounds, Operator, at its expense, shall carry and keep in full force and effect for the duration of this Agreement, Auto Liability insurance covering Bodily Injury with a liability limit of not less than $50,000 for New York and Rhode Island, $40,000 for Connecticut and $30,000 for New Jersey and Pennsylvania; and Property Damage with a liability limit of not less than $25,000 for Rhode Island, $10,000 for New York and Connecticut, and $5,000 for New Jersey and Pennsylvania; and a deductible of no greater than $1,000.

      (b)    For trucks with a gross weight of more than 10,000 pounds, Operator, at its expense, shall carry and keep in full force and effect for the duration of this Agreement, Commercial Auto Liability insurance covering Bodily Injury and Property Damage, with a liability limit of not less than $1,000,000 Combined Single Limit and a deductible of no greater than $1,000, including an Additional Insured endorsement.

108 Northeast Logistics Diligent O O Agreement Updated 2/12 wo notary.doc
Copyright ©Norlyn Enterprises, Inc. All rights reserved. Duplication in part or whole in any form whatsoever is prohibited.

_____OO Initials    _____Diligent Initials



(c)    For purposes of subparagraphs (a) and (b) hereof, Operator will provide DILIGENT with a copy of an insurance policy that evidences such insurance. If the scope of this Agreement involves more than one vehicle, the appropriate level of coverage must be provided for all other vehicles, whether owned or not. For purposes of subparagraph (b) only, the Additional Insured endorsement shall name DILIGENT as well as its parents, officers, directors, subsidiaries and affiliates.

(d)    Workers' Compensation Insurance.  If required by the laws of the States of New Jersey, New York, Connecticut, Pennsylvania and Rhode Island, or as required by our client, Operator, at its own expense, shall keep in full force and effect during the term of this Agreement, Workers' Compensation Insurance that complies with applicable laws of the states of New Jersey, New York, Connecticut, Pennsylvania and Rhode Island.

**Operator's relationship with DILIGENT is such that Operator is not entitled to Workers' Compensation benefits. Operator understands and agrees that Operator will not be able to file a claim for Workers' Compensation benefits as an employee of DILIGENT because Operator is not an employee of DILIGENT.**

(e)    For purposes of subparagraphs (a), (b) and (d), each such insurance policy shall require the insurer to provide DILIGENT with thirty-days (30) written notice of any changes in coverage, expiration, termination or cancellation of such insurance.  Operator shall also immediately notify DILIGENT of any changes in coverage, expiration, termination or cancellation of such insurance. Operator's failure to maintain the aforementioned insurance shall constitute a breach of this Agreement.

(f)    Operator agrees, without qualification, to cooperate with and assist DILIGENT and its chosen attorneys in the defense of any lawsuit against DILIGENT or its insurers that relates to a client engagement performed by Operator, regardless of the merit of the lawsuit.

10.    **Operator's Indemnity**

(a)    Operator agrees to release, indemnify, hold harmless and defend (i) DILIGENT and its shareholders, officers, directors, employees, agents, licensees, successors and assigns, and (ii) DILIGENT's clients and their shareholders, officers, directors, employees, agents, licensees, successors and assigns (individually and collectively hereinafter "Indemnified Parties"), from and against any and all liabilities, costs and expenses, actions, causes of action, claims, demands, or suits of whatever kind or nature, which may arise or be claimed against the Indemnified Parties for injury, death or damages to persons or property resulting or arising from any act or omission of Operator, its agents, drivers or employees.  Operator also hereby releases the Indemnified Parties of and from all liabilities, costs and expenses, actions, causes of action, claims, demands, or suits of whatever kind or nature, that result or arise from any such act or omission.   However, the Indemnities are not released from nor indemnified against the consequences of their own negligence.

Copyright ©Norlyn Enterprises, Inc.  All rights reserved.  Duplication in part or whole in any form whatsoever is prohibited.

OO Initials        Diligent Initials



(b)    Operator acknowledges and accepts that there are inherent foreseeable risks in performing the services that are the subject of this Agreement, including but not limited to risk of property damage and bodily injury. To the maximum extent permitted under law, Operator voluntarily assumes such risks.

11.    **Operator's Liability for Items.** Items of others picked up by Operator shall be deemed to be in the care, custody and control of Operator until the same shall have been delivered to, and accepted by, the designated consignee, recipient or the consignee or recipient's authorized agent. Operator shall be liable to DILIGENT to the extent that DILIGENT is liable for such loss or damage.

12.    **Safety and Security Identification.**    In accordance with clients' requests, Operator shall furnish and maintain, at its own cost and expense, safety and security identification, which shall consist of a shirt and identification badge that appropriately identifies Operator. Operator shall wear/carry the appropriate safety and security identification at all times while performing services under this Agreement.

13.    **Licenses, Permits and Registrations.** Operator shall obtain and maintain at Operator's expense all licenses, permits and registrations as may be required to perform a client engagement under this Agreement.

14.    **Operator's Standard of Performance.** Operator shall, at all times, use Operator's best efforts, ability, experience and talents in the performance of any services hereunder.

15.    **Survival Sections.** Paragraphs 6, 7, 9, 10, 11 and shall survive the termination of this Agreement.

16.    **Termination of Agreement.**

(a)    Either party shall have the right at any time during the term hereof to terminate this Agreement by giving the other party seven (7) days' written notice to such effect.

(b)    DILIGENT shall have the right at any time to immediately terminate this Agreement in the event that Operator shall materially breach this Agreement, by (i) failing to carry and keep in full force and effect the policies of insurance required under this Agreement, or (ii) in any other manner failing to perform as required pursuant to the terms of this Agreement. DILIGENT shall exercise such right of termination by giving Operator written notice to such effect. Operator shall have the right at any time to immediately terminate this Agreement in the event DILIGENT shall materially breach this Agreement, including by failing to remit to Operator all delivery fees due and owing within 30 days of invoicing.

(c)    Because DILIGENT incurs numerous expenses to set up a new Owner Operator account with its customer, Operator agrees to the payment by Operator to DILIGENT of $75.00 in the event Operator terminates the agreement within 90 days of the signing of the

Copyright ©Norlyn Enterprises, Inc. All rights reserved. Duplication in part or whole in any form whatsoever is prohibited.

H.G. OO Initials      Diligent Initials



agreement or should DILIGENT terminate the agreement for Operator's failure to complete a job opportunity or fail to carry agreed insurance. This sum may be deducted from Operators last invoice.

(d)     In the event of a breach of this Agreement by Operator, DILIGENT may either terminate this Agreement or DILIGENT may not (without prejudice to termination by DILIGENT at a later date), but in either event DILIGENT may notify another Owner Operator of the opportunity to complete any incomplete client engagement that Operator had accepted. Operator shall reimburse DILIGENT, and authorizes DILIGENT to offset from any contract payments owed to Operator hereunder, for any costs, expenses or damages incurred by DILIGENT as a result of DILIGENT having to notify another Owner Operator of the opportunity to complete the deliveries, including, but not limited to, costs of re-handling and transferring the Items, service expenses and damages paid to the shipper or consignee.

17.    **Dispute Resolution.**

(a)     **Arbitration of Claims:** In the event of a dispute between the parties, the parties agree to resolve the dispute as described in this Paragraph (hereafter "the Arbitration Provision"). This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and applies to any dispute brought by either Operator or DILIGENT arising out of or related to this Agreement or Operator's relationship with DILIGENT, including termination of the relationship. The provisions of this Arbitration Provision shall remain in force after the parties' contractual relationship ends. Nothing contained in this Arbitration Provision shall be construed to prevent or excuse Operator from utilizing any procedure for resolution of complaints established in this Agreement (if any), and this Arbitration Provision is not intended to be a substitute for the utilization of such procedures. Except as it otherwise provides, this **Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law, and therefore this Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial.**

(i)     <u>Claims Covered By Arbitration Provision</u>: Unless carved out below, claims involving the following disputes shall be subject to arbitration under this Arbitration Provision regardless of whether brought by Operator, DILIGENT or any agent acting on behalf of either: (1) disputes arising out of or related to this Agreement; (2) disputes arising out of or related to Operator's relationship with DILIGENT, including termination of the relationship; and (3) disputes arising out of or relating to the interpretation or application of this Arbitration Provision, but not as to the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. This Arbitration Provision also applies, without limitation, to disputes regarding any city, county, state or federal wage-hour law, trade secrets, unfair competition, compensation, meal or rest periods, expense reimbursement, uniform maintenance, training, termination, discrimination or harassment and claims arising under the Uniform Trade Secrets Act, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement

108 Northeast Logistics Diligent O O Agreement Updated 2/12 wo notary.doc
Copyright ©Norlyn Enterprises, Inc. All rights reserved. Duplication in part or whole in any form whatsoever is prohibited.

H.G__ OO Initials    ___ Diligent Initials



Income Security Act, Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, and all other similar federal and state statutory and common law claims (excluding workers' compensation, state disability insurance and unemployment insurance claims).

(ii)    Administrative Agency Claims: Claims may be brought before, and remedies awarded by, an administrative agency if applicable law permits access to such an agency notwithstanding the existence of an agreement to arbitrate. Such administrative claims include without limitation claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), the National Labor Relations Board (www.nlrb.gov), and the Office of Federal Contract Compliance Programs (www.dol.gov/esa/ofccp). Nothing in this Arbitration Provision or this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

(iii)    Excluded Claims: The following claims shall be excluded from coverage by this Arbitration Provision: (1) claims that, as a matter of law, may not be subject to a mandatory arbitration agreement, including; (2) claims based on private attorney general representative action statutes (as discussed further below); and (3) claims that may be adjudicated in small claims court.

(b)    Arbitration Procedure: Except as provided in this Arbitration Provision, any controversy or claim covered by this Arbitration Provision shall be settled by arbitration administered by the American Arbitration Association ("AAA") and shall be held in accordance with the applicable AAA Arbitration rules. These rules are available at www.adr.org. The Arbitrator shall be selected by mutual agreement of Operator and DILIGENT. Unless Operator and DILIGENT mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the location where the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the jurisdiction where the arbitration will be conducted. If for any reason the parties cannot agree to an Arbitrator, either party may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted for appointment of a neutral Arbitrator. The court shall then appoint an Arbitrator, who shall act under this Arbitration Provision with the same force and effect as if the parties had selected the Arbitrator by mutual agreement. The location of the arbitration proceeding shall be no more than 45 miles from the geographic area where Operator performed delivery services arranged by DILIGENT, unless each party to the arbitration agrees in writing otherwise. If Operator no longer resides in the general geographical vicinity where Operator performed delivery services, Operator and DILIGENT shall agree to a location of the arbitration within 45 miles of where Operator resides, provided it is within the same state in which Operator performed delivery services arranged by DILIGENT. In arbitration, the parties shall have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator.

108 Northeast Logistics Diligent O O Agreement Updated 2/12 wo notary.doc
Copyright ©Norlyn Enterprises, Inc. All rights reserved. Duplication in part or whole in any form whatsoever is prohibited.
Page 8 of 11

H·G___ OO Initials    ___ Diligent Initials



(c)      **Making A Demand For Arbitration:** A demand for arbitration must be in writing and delivered by hand or first class mail to the other party within the applicable statute of limitations period. Any demand for arbitration made to DILIGENT shall be sent to Northeast Logistics, Inc. d/b/a Diligent Delivery Systems, 333 N. Sam Houston Pkwy E, St 500, Houston, TX 77060. The Arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration.

(d)      **Class Action Waiver: There shall be no right or authority for any dispute to be brought, heard or arbitrated as a class, collective or representative action ("Class Action Waiver").** Notwithstanding any other clause contained in this Arbitration Provision, the preceding sentence shall not be severable from this Arbitration Provision in any case in which the dispute to be arbitrated is brought as a class, collective or representative action. Private attorney general representative actions are not covered within the scope of this Agreement and may be maintained in a court of law, but an Operator may seek in arbitration individual remedies for him or herself under any applicable private attorney general representative action statute, and the Arbitrator shall decide whether Operator is an aggrieved person under any private attorney general statute. Operator shall not be retaliated against, penalized or threatened with possible penalty as a result of any attempt by Operator to exercise rights protected under Section 7 of the National Labor Relations Act, including the filing of or participation in a class, collective or representative action in any forum. However, DILIGENT may lawfully seek enforcement of this Arbitration Provision and the Class Action Waiver under the Federal Arbitration Act and seek dismissal of such class, collective or representative actions or claims. Notwithstanding any other clause contained in this Arbitration Provision, any claim that all or part of the Class Action Waiver is unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an Arbitrator.

(e)      **Attorneys' Fees And Arbitration Costs:** Each party shall pay the fees for its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. Costs incidental to the arbitration, including the cost of the Arbitrator and the meeting site ("Arbitration Costs") will be borne by DILIGENT and Operator equally, unless otherwise required by applicable law. Any dispute regarding a party's obligation to pay Arbitration Costs shall be determined by the Arbitrator. In the event Operator contends that, as a matter of law, it is not responsible for payment of any Arbitration Costs, Operator shall have no obligation to pay any portion of the contested Arbitration Costs until, and only if, the Arbitrator determines that Operator is responsible for the costs. If necessary for arbitration of the dispute, DILIGENT agrees to cover the amount of the Arbitration Costs contested by Operator until such time as the Arbitrator determines payment responsibility. If the Arbitrator determines that Operator is responsible for any amount of the Arbitration Costs already paid by DILIGENT, Operator shall remit payment of that amount to DILIGENT within 30 days of the Arbitrator's determination.

(f)      **Post-Arbitration Procedures:** Within 30 days of the close of the arbitration hearing (which period may be extended by stipulation of the parties), any party shall have the right to prepare, serve on the other party and file with the Arbitrator a post-arbitration

Copyright ©Norlyn Enterprises, Inc. All rights reserved. Duplication in part or whole in any form whatsoever is prohibited.


____OO initials  ____Diligent initials



brief. The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her or its individual capacity in a court of law for the claims presented to and decided by the Arbitrator, and no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Arbitration Provision. The Arbitrator shall issue a decision or award in writing, stating the essential findings of fact and conclusions of law. Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of the parties. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

(g)    **Application To Existing Claims And Controversies:**  This Arbitration Provision is intended broadly to apply to all controversies hereafter arising out of or related to the parties' relationship or Operator's performance of services for DILIGENT or its customers, as well as any existing controversy that has arisen from the parties' relationship or Operator's performance of services for DILIGENT or its customers, as is permitted under Section 2 of the Federal Arbitration Act.

(h)    **Opt-Out Provision:**  If Operator does not want to be subject to this Arbitration Provision, Operator may opt out of this Arbitration Provision by notifying DILIGENT in writing of Operator's desire to opt out of this Arbitration Provision, which writing must be dated, signed and submitted by U.S. Mail or hand delivery to DILIGENT at Northeast Logistics, Inc. d/b/a Diligent Delivery Systems, 333 N. Sam Houston Pkwy E, St 500, Houston, TX 77060. In order to be effective, the writing must clearly indicate Operator's intent to opt out of this Arbitration Provision and the envelope containing the signed writing **must be post-marked within 30 days** of the date this Agreement is executed by Operator. Operator's writing opting out of this Arbitration Provision will be filed with a copy of this Agreement and maintained by DILIGENT. Should Operator not opt out of this Arbitration Provision within the 30-day period, Operator and DILIGENT shall be bound by the terms of this Arbitration Provision.

(i)    **Right to Consult With An Attorney:**  Operator has the right to consult with private counsel of Operator's choice with respect to any aspect of, or any claim that may be subject to, this Arbitration Provision. In the event any portion of this Arbitration Provision is deemed unenforceable, the remainder of this Arbitration Provision will be enforceable. If the Class Action Waiver is deemed to be unenforceable, Operator and DILIGENT agree that the Arbitration Provision is otherwise silent as to any party's ability to bring a class, collective or representative action in arbitration.

18.    **Waiver.**    The waiver of a breach of any of the terms or conditions hereof shall be limited to the act or acts constituting such breach and shall never be construed as being a continuing or permanent waiver of any such terms or conditions.

19.    **Headings.**    The headings set forth herein have been inserted for convenience

108 Northeast Logistics Diligent O O Agreement Updated 2/12 wo notary.doc
Copyright ©Norlyn Enterprises, Inc. All rights reserved. Duplication in part or whole in any form whatsoever is prohibited.



_____ OO Initials _____ Diligent Initials



only and are not to be considered when construing the provisions of this Agreement.

20. **Entire Agreement.** This Agreement and Addenda hereto constitute the entire agreement of the parties relating to the subject matter hereof and supersede any and all oral or written agreements or negotiations relating to the subject matter of this Agreement. Each party to this Agreement acknowledges that no representations, inducements, promises or agreements, oral or otherwise, have been made by either party or anyone acting on behalf of any party hereto which are not embodied herein. Any modification of or amendment to this Agreement will be effective only if it is in writing and signed by the party to be charged.

21. **Gender, Number.** Whenever used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine or neuter gender shall include all genders.

22. **Notice.** Any notice to be given hereunder by a party must be in writing and delivered in person, by fax or by mail, postage prepaid. Notice by mail shall be deemed made when mailed. Notices shall be addressed to a party at its respective address or at such other address as the party may designate by giving written notice in accordance with the provisions of this Paragraph.

**Northeast Logistics, Inc. dba Diligent Delivery Systems**
333 N. Sam Houston Pkwy E, Ste 500
Houston, TX 77060
Phone: 1-888-374-3354      Fax: 281-582-8804

Operator's Name/Business/Trade Name _Henry Gonzalez_

Business Address: ____REDACTED_____

Telephone Number: ___REDACTED____ Fax:_____

THIS IS A LEGALLY BINDING DOCUMENT. PLEASE READ IT CAREFULLY AND SEEK LEGAL ADVICE IF ANY PORTION OF THIS AGREEMENT IS NOT UNDERSTOOD. THE PARTIES HERETO AGREE THAT BY SIGNING THIS AGREEMENT THEY HAVE CONSULTED WITH LEGAL COUNSEL OR HAVE KNOWINGLY AND VOLUNTARILY WAIVED SUCH RIGHT.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written. This Agreement shall take effect as a sealed instrument.

**DILIGENT**                                    **OPERATOR**

By:_____              By:_____

Name Printed_____  Name Printed _Henry Gonzalez_

108 Northeast Logistics Diligent O O Agreement Updated 2/12 wo notary.doc

Copyright ©Norlyn Enterprises, Inc. All rights reserved. Duplication in part or whole in any form whatsoever is prohibited.

Page 11 of 11

____ OO Initials ____ Diligent Initials