UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOHANNA DIAZ, JONATHON RODRIGUEZ,
ISRAEL SANTANA, HENRY GONZALEZ,
TASHAUNDA FOOTMAN, on behalf of
themselves and all others similarly situated, and
ROBERT CONVERSE, ISAAC RODRIGUEZ,
and JESSE DAVIS, individually,

                    Plaintiffs,                MEMORANDUM AND ORDER

    -against-                                CV 15-1415 (LDW) (ARL)

MICHIGAN LOGISTICS INC. d/b/a DILIGENT
DELIVERIES, NORTHEAST LOGISTICS, INC.
d/b/a DILIGENT DELIVERIES, and PARTS
AUTHORITY, INC.,

                    Defendants.
----------------------------------------------------------------X
WEXLER, District Judge

Plaintiffs bring this action against defendants Michigan Logistics Inc. d/b/a Diligent Deliveries ("Michigan Logistics") and Northeast Logistics, Inc. d/b/a Diligent Deliveries ("Northeast Logistics") (collectively, "Diligent") and Parts Authority Inc. ("Parts Authority") for alleged violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), claiming that Defendants improperly classified them as independent contractors and denied them minimum wage and overtime compensation. Defendants move to compel arbitration and stay all proceedings pending arbitration. Plaintiffs oppose the motion.

I. BACKGROUND

For purposes of this decision, the background can be summarized as follows. On March 18, 2015, plaintiffs Johanna Diaz, Jonathan Rodriguez, Israel Santana, and Henry Gonzalez, on

behalf of themselves and all others similarly situated, filed the initial Complaint in this action against Defendants, alleging various wage and hour claims pursuant to the FLSA and NYLL.  On May 28, 2015, Plaintiffs filed a First Amended Complaint ("FAC"), adding as plaintiffs Tashaunda Footman, seeking recovery on behalf of herself and others similarly situated, and Robert Converse, Isaac Rodriguez, and Jesse Davis, seeking recovery on an individual basis.  Since June 30, 2015, a number of individuals have filed consents to join this action (the "Opt-in Plaintiffs").

According to Defendants, Diligent is a third-party logistics company in the business of arranging commercial transportation services for clients in the automotive industry.  Declaration of Larry Browne in Support of Defendants' Motion to Compel Individual Arbitration and Stay Proceedings Pending Arbitration ("Browne Decl.") ¶ 3.  In doing so, Diligent evaluates customers' specific transportation needs and then contracts with "independent third-party transportation providers," which it refers to as "Owner-Operators," to provide the requested services.  *Id.*  Parts Authority is one of Diligent's customers.  *Id*. ¶ 4.  Michigan Logistics, a Texas corporation, does business in New York, Rhode Island, New Jersey, and Connecticut.  *Id*. ¶ 5.  Northeast Logistics, also a Texas corporation, does business in New York, Rhode Island, New Jersey, and Connecticut.  *Id*. ¶ 6.  Each Owner-Operator enters into an "Owner-Operator Agreement" with Diligent, memorializing the parties' rights and obligations.  *Id.* ¶ 7.  Defendants have provided the Court with the Owner-Operator Agreements for the eight named plaintiffs:  Henry Gonzalez, Johanna Diaz, Robert Converse, Isaac Rodriguez, Jesse Davis, Tashaunda Footman, Jonathan Rodriguez, and Israel Santana.  *See* Browne Decl. Exs. A-H.  Each Owner-Operator Agreement contains a "Dispute Resolution" provision.  *Id*.

After Plaintiffs filed the initial Complaint, counsel for Diligent requested that Plaintiffs dismiss the action and resolve their disputes against all Defendants through individual arbitration, purportedly in accordance with the parties' "Dispute Resolution" provisions. Declaration of Andrew P. Marks in Support of Defendants' Motion to Compel Individual Arbitration and Stay Proceedings Pending Arbitration ¶ 2. Plaintiffs refused to submit their claims to arbitration, and defendants filed the present motion. *Id*. ¶ 3.

In opposing the motion, plaintiffs maintain that they were hired by Defendants to transport auto parts to mechanics, auto body shops, and Parts Authority stores. Declaration of Troy Kessler ("Kessler Decl.") Exs. 1-5, ¶¶ 4-6. Plaintiffs allege that they were Defendants' "employees," not "independent contractors." *See* FAC ¶¶ 125-134; Kessler Decl. Exs. 1-5. Plaintiffs were responsible for transporting, loading, and unloading the auto parts they delivered for Defendants. *Id.* ¶ 5. Plaintiffs were required to use their own cars to transport the auto parts. *Id*. ¶ 7. To accomplish their assigned tasks, Plaintiffs frequently worked more than 40 hours per week and did not receive overtime pay. FAC ¶¶ 140-141, 150-151, 160-161, 170-171, 180-181, 190-191, 200-201, 210-211. Defendants also charged Plaintiffs an "administrative fee" of two dollars per workday. *Id.* ¶¶ 142, 152, 162, 172, 182, 192, 202, 212.

Defendants drafted three different Owner-Operator Agreements, which they included with their original moving papers. Plaintiffs refer to these agreements as "Agreement A," "Agreement B," and "Agreement C."

Plaintiffs Tashaunda Footman, Jonathan Rodriguez, and Israel Santana signed Agreement A. *See* Browne Decl. Exs. F-H. After the motion was fully submitted, Defendants submitted supplemental papers, claiming that they recently discovered that each of these three

plaintiffs executed an "Addendum" to Agreement A (the "Agreement A Addendum"). *See* Letter of Andrew P. Marks, dated Dec. 29, 2015 ("Marks Letter"), at 1.[1] "Diligent Delivery Systems" is identified as the other party to the Agreement A Addendum. Paragraph 3(a) of the Agreement A Addendum provides in part:

> 3. Dispute Resolution
>
> (a) Arbitration of Claims: In the event of a dispute between the parties, the parties agree to resolve the dispute as described in this Paragraph (hereafter "the Arbitration Provision"). This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and applies to any dispute brought by either Operator or DILIGENT arising out of or related to this Agreement or Operator's relationship with DILIGENT, including termination of the relationship. The provisions of this Arbitration Provision shall remain in force after the parties' contractual relationship ends. . . . [T]his Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law, and therefore this Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial.

*See id.* Exs. A-C ¶ 3(a).

Plaintiffs Johanna Diaz, Henry Gonzalez, Isaac Rodriguez, and Jesse Davis signed Agreement B. Northeast Logistics is the only other party/signatory to Agreement B. Paragraph 17(a) of Agreement B provides in part:

> **17. Dispute Resolution**
>
> **(a) Arbitration of Claims:** In the event of a dispute between the parties, the parties agree to resolve the dispute as

---

[1] In a responsive submission permitted by the Court, Plaintiffs urged the Court not to consider Defendants' supplemental submission, arguing that Defendants failed to provide an excuse or reason for the late submission or an appropriate evidentiary declaration in support. Given that Plaintiffs do not dispute the authenticity of the Agreement A Addendum, apparently signed by their clients, the Court accepts Defendants' supplemental submission.

> described in this Paragraph (hereafter "the Arbitration Provision"). This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and applies to any dispute brought by either Operator or DILIGENT arising out of or related to this Agreement or Operator's relationship with DILIGENT, including termination of the relationship. The provisions of this Arbitration Provision shall remain in force after the parties' contractual relationship ends. . . . [T]his Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law, and therefore this Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial.

Browne Decl. Exs. A, B, D & E ¶ 17(a) (bold in original).

Plaintiff Robert Converse is the only named plaintiff that signed Agreement C. "Diligent" and "dba Diligent Delivery Systems" is identified as the other party/signatory to Agreement C. Paragraph 17(a) of Agreement C provides in part:

> **17. Dispute Resolution**
>
> **(a) Arbitration of Claims:** In the event of a dispute between the parties, the parties agree to resolve the dispute as described in this Paragraph (hereafter "the Arbitration Provision"). This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and applies to any dispute brought by either Operator or DILIGENT arising out of or related to this Agreement or Operator's relationship with DILIGENT, including termination of his relationship and including claims by owner operator against DILIGENT'S CUSTOMER. The provisions of this Arbitration Provision shall remain in force after termination of this Agreement, without regard as to the manner such termination occurs. . . . [T]his Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law, and therefore this Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial.

*Id.* Ex. C ¶ 17(a) (bold in original).

The Agreement A Addendum, Agreement B and Agreement C also contain detailed

provisions concerning, *inter alia*, arbitration procedure, demand for arbitration, class and collective action waiver, attorneys' fees and arbitration costs, and post-arbitration procedure, with any arbitration to be administered by the American Arbitration Association.

II. DISCUSSION

A. Applicability of the FAA and/or New York Arbitration Law

Defendants move to compel arbitration, primarily relying on the Federal Arbitration Act ("FAA"), 9. U.S.C. §§ 1 *et seq.*, and, alternatively, on New York arbitration law.[2] Plaintiffs argue that this Court cannot compel arbitration pursuant to the FAA because Plaintiffs are exempt from the application of the FAA, and New York arbitration law cannot apply because the parties did not manifest an intention to be bound by New York law.

FAA § 1 exempts from arbitration "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce ." 9 U.S.C. § 1. In *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105 (2001), the Supreme Court held that § 1 "exempts from the FAA only contracts of employment of transportation workers," rejecting an

---

[2]Defendants made this alternative argument for the first time in their reply brief, albeit in a footnote. Courts normally do not consider arguments raised for the first time in a reply brief. *See Rowley v. City of New York*, No. 00 Civ. 1793 (DAB), 2005 WL 2429514, at *5 (S.D.N.Y. Sept. 30, 2005) (citing cases). As Plaintiffs first raised the § 1 exemption in their opposing papers, Defendants understandably addressed the exemption and this alternative argument in their reply. However, Defendants relegated this alternative argument to a footnote, not the appropriate place to raise a substantial argument. *See id.* at 6. As noted above, the Court permitted Plaintiffs to file a responsive submission to Defendants' supplemental submission. The Court also directed Plaintiffs to address (1) Defendants' argument regarding the applicability of New York arbitration law, and (2) the proper disposition of the Opt-in Plaintiffs' claims should the Court grants Defendants' motion. As a result, Plaintiffs filed a supplemental letter brief, and Defendants filed a responsive letter brief. *See* Docket Entries 62 & 64.

interpretation of § 1 that would exempt *all* employment contracts from the FAA. *Id.* at 119; *see also Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 982 (2d Cir. 1997) (observing that FAA § 1 exemption is "limited to workers involved in the transportation industries"). In so holding, the Supreme Court observed that the majority of Courts of Appeals limited the exclusion to "transportation workers, defined, for instance, as those workers actually engaged in the movement of goods in interstate commerce." *Circuit City*, 532 U.S. at 112 (quoting *Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1471 (D.C. Cir. 1997)).

Defendants argue that Plaintiffs do not fall within the § 1 exemption because (1) Plaintiffs were "independent contractors" – as evidenced by the Owner-Operator Agreements – and therefore they have no "contract of employment" within the meaning of § 1; and (2) that, while Plaintiffs may have been "transportation workers," they were not "engaged in interstate commerce" within the meaning of § 1. Plaintiffs argue that they are exempt under § 1 because they were transportation workers engaged in interstate commerce. Plaintiffs claim they were not "independent contractors," as labeled by Defendants, but "employees," as alleged in the FAC and in opposition to the motion. *See* FAC ¶¶ 125-134; Kessler Decl. Exs. 1-5.

As for Defendants' argument that Plaintiffs do not fall within the § 1 exemption because Plaintiffs were "independent contractors," the Court cannot say, based on the limited record presented, that Plaintiffs were not "employees" subject to a "contract of employment" within the meaning of the FAA. Contrary to Defendants' argument, the economic reality of the parties' relationship—a highly factual question—determines employment status, not a contractual label. *See Cilluffo v. Cent. Refrigerated Servs., Inc.*, No. EDCV 12-00886 VAP(OPx), 2012 WL 8523507, at *4 (C.D. Cal. Sept. 24, 2012). Discovery and a fact-intensive analysis is required for

a determination of whether Plaintiffs were "independent contractors," rather than "employees" subject to a "contract of employment" for purposes of the FAA. *See, e.g.*, *Oliveira v. New Prime, Inc.*, No. 15-10603-PBS, 2015 WL 6472248, at *8 (D. Mass. Oct. 27, 2015) (directing discovery on threshold question of plaintiff's status as employee or independent contractor during certain time period).

Nevertheless, the Court need not make that determination because the Court agrees with Defendants that, even assuming that Plaintiffs fall within the § 1 exemption[3] (and the FAA does not apply), Plaintiffs' claims are subject to mandatory arbitration under New York arbitration law. Plaintiffs argue that given the parties' explicit choice to apply the FAA, the FAA is the *only* law the Court should consider in determining whether to compel arbitration, effectively rendering the arbitration provision unenforceable. To the contrary, the inapplicability of the FAA does not render the parties' arbitration provision unenforceable. The detailed arbitration provision clearly demonstrates the parties' intent to arbitrate disputes. Indeed, the parties agreed that "this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be

---

[3] Notably, as for Defendants argument that Plaintiffs were not engaged in interstate commerce within the meaning of § 1, it appears that Plaintiffs use of vehicles to deliver automotive parts was both integral to Plaintiffs' fulfillment of their duties and vital to Defendants' commercial enterprise of arranging the transportation of goods that moved in interstate commerce. *See Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 351 (8th Cir. 2005) (identifying eight non-exclusive factors for determining whether employee is exempt transportation worker under FAA § 1). As such, Plaintiffs sufficiently allege that they were engaged in interstate transportation, notwithstanding that they did not actually drive across state lines, as Plaintiffs were directly responsible for transporting and handling automotive parts that allegedly moved in interstate commerce – the heart of Defendants' business. *Cf. Christie v. Loomis Armored US, Inc.*, No. 10-cv-2011-WJM-KMT, 2011 WL 6152979, at *3 (D. Colo. Dec. 9, 2011) (observing that an "employee need not actually transport goods across state lines to be part of a class of employees engaged in interstate commerce. 'Interstate commerce' includes not only goods that travel across state lines but also the 'intrastate transport of goods in the flow of interstate commerce.' " (quoting *Siller v. L & F Distribs., Ltd.*, 109 F.3d 765 (5th Cir. 1997)).

resolved in a court of law, and therefore this Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial." Thus, assuming that the FAA does not apply, state arbitration law governs. *See Valdes v. Swift Transp. Co.*, 292 F. Supp. 2d 524, 527 (S.D.N.Y. 2003); *see also Shanks v. Swift Transp. Co.*, No. L-07-55, 2008 WL 2513056, at *4 (S.D. Tex. June 19, 2008) ("While the FAA does not require arbitration, the question remains whether the exemption of Section 1 operates as a form of reverse preemption, so as to prohibit arbitration of the dispute altogether. Plainly, it does not. The weight of authority shows that even if the FAA is inapplicable, state arbitration law governs."); *Garza Nunez v. Weeks Marine, Inc.*, No. 06-3777, 2007 WL 496855, at *6-7 (E.D. La. Feb.13, 2007) (observing that "no language in Section 1 addresses whether or not FAA-exempt employment contracts are enforceable otherwise," and concluding that "Arbitration Agreement would be enforceable under state law, even if it was exempted from FAA governance"); *O'Dean v. Tropicana Cruises Int'l, Inc.*, No. 98 CIV. 4543 (JSR), 1999 WL 335381, at *1 (S.D.N.Y. May 25, 1999) ("The inapplicability of the FAA does not mean, however, that arbitration provisions in seaman's employment contracts are unenforceable, but only that the particular enforcement mechanisms of the FAA are not available."). Federal common-law choice of law rules apply where, as here, the action was brought under federal question jurisdiction and the agreements contain no general or otherwise applicable choice of law provision. *See Valdes*, 292 F. Supp. 2d at 528 (citing *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 794-95 (2d Cir. 1980)). Those rules dictate applying the law of the jurisdiction having the "greatest interest in the litigation," *In re Koreag, Controle et Revision S.A.,* 961 F.2d 341, 350 (2d Cir. 1992). Since New York clearly has the greatest interest

in the litigation, New York arbitration law applies. New York law favors arbitration, "interfering as little as possible with the freedom of consenting parties' to submit disputes to arbitration." *Bd. of Educ. of Bloomfield Cent. Sch. Dist. v. Christa Constr., Inc.*, 80 N.Y.2d 1031, 1032 (1992), *amended on other grounds*, 80 N.Y.2d 1033 (1993). New York arbitration law does not exempt transportation workers from arbitration. Thus, even assuming that the FAA does not apply, Plaintiffs are compelled to arbitrate their claims.

B. Plaintiffs' Remaining Arguments

Plaintiffs further argue that (1) Parts Authority cannot compel Plaintiffs to arbitrate, since it is a nonsignatory to the Agreements; (2) the purported class and collective action waivers in the Agreement A Addendum, Agreement B, and Agreement C are invalid in that they violate the NLRA and Norris LaGuardia Act by interfering with Plaintiffs' right to engage in protected concerted activity; and (3) the "Dispute Resolution" provision in Agreement B did not survive the termination of the agreement.[4] As discussed below, none of these arguments has merit.

1. Nonsignatory Enforcement Under Doctrine of Equitable Estoppel

Plaintiffs argue that Parts Authority cannot compel Plaintiffs to arbitrate since it is a nonsignatory to the Agreements. Defendants argue that the factual allegations raised by the FAC are sufficient to warrant application of the doctrine of "equitable estoppel," allowing nonsignatory Parts Authority to compel Plaintiffs to arbitrate. As one district court has explained:

---

[4]Plaintiffs had also argued that Agreement A does not contain an enforceable agreement to "arbitrate." In this respect, as Plaintiffs noted, ¶ 15 of Agreement A provides only that the parties "agree to resolve any disputes . . . directly or with an agreed form of 'Alternative Dispute Resolution,' " Browne Decl. Exs. F-H ¶ 15. Paragraph 3(a) of the Agreement A Addendum mooted this argument. *See* Marks Letter Exs. A-C ¶ 3(a) ("Arbitration Provision").

> Under principles of estoppel, "signatories to an arbitration agreement can be compelled to arbitrate their claims with a non-signatory where a careful review of the relationship among the parties, the contracts they signed … and the issues that had arisen among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed."

*In re A2P SMS Antitrust Litig.,* 972 F. Supp. 2d 465, 476 (S.D.N.Y. 2013) (quoting *Denney v. BDO Seidman, L.L.P.,* 412 F.3d 58, 70 (2d Cir. 2005)). Although Plaintiffs acknowledge this doctrine, they argue that Defendants cannot rely simply on the allegations of the FAC to support equitable estoppel. To the contrary, as Defendants argue, when considering whether to apply equitable estoppel, courts properly may rely upon the allegations of a plaintiff's complaint. *See Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010). Here, Plaintiffs assert in the FAC identical legal claims and factual allegations against Diligent and Parts Authority, and allege that Defendants "constituted a single employer," FAC ¶ 80. Thus, the subject matter of the dispute between Plaintiffs and Diligent is factually intertwined with the dispute between Plaintiffs and Parts Authority. *See Ragone*, 595 F.3d at 128. Accordingly, Plaintiffs can be compelled to arbitrate against Parts Authority, a nonsignatory.

2. <u>Enforceability of Class and Collective Action Waivers</u>

Plaintiffs argue that the purported class and collective action waivers in the Agreement A Addendum, Agreement B, and Agreement C violate the NLRA and Norris LaGuardia Act, relying on *Murphy Oil USA, Inc.*, 361 NLRB No. 720 (Oct. 28, 2014), and *D.R. Horton Inc.*, 357 NLRB No. 184 (Jan. 3, 2012). As Plaintiffs' acknowledge, those decisions have been overwhelmingly rejected by courts throughout the country, including those in the Second Circuit. *See* Memorandum of Law in Opposition of Defendants' Motion to Dismiss the Complaint and to

Compel Individual Arbitration ("Plaintiffs' Mem."), at 18 (citing cases). This Court agrees with the vast majority of cases declining to follow *Murphy* and *D.R. Horton*. Thus, the Court rejects Plaintiffs' argument. Accordingly, the class and collective action waivers are enforceable against Plaintiffs.

    3. <u>Posttermination Effect of Arbitration Provision</u>

Plaintiffs argue that the "Dispute Resolution" provision in Agreement B did not survive termination of the agreement. Contrary to Plaintiffs' representations, Agreement B expressly provides that the "Arbitration Provision" survives termination, as quoted above. *See* Browne Decl. Exs. A, B, D & E ¶ 17(a). Notably, the "Arbitration Provision" in the Agreement A Addendum and the "Arbitration Provision" in Agreement C also expressly provide that the provision survives termination, as quoted above. *See id.* Marks Letter Exs. A-C ¶ 3(a); Browne Decl. Ex. C ¶ 17(a).[5]

C. <u>Disposition Regarding Opt-in Plaintiffs' Claims</u>

The parties agree that the Court must dismiss without prejudice the Opt-in Plaintiffs' claims if the Court grants Defendants' motion to compel arbitration.

## III. <u>CONCLUSION</u>

For the reasons above, Defendants' motion to compel arbitration is granted, and the Opt-

---

[5] Plaintiffs had also argued that Agreement A did not survive termination. In this respect, as Plaintiffs noted, ¶ 15 of Agreement A (the "Dispute Resolution" provision) does not expressly provide that it survives termination, and ¶ 16 (the "Survival Section") does not reference paragraph 15. *See* Browne Decl. Exs. F-H ¶¶ 15, 16. Paragraph 3(a) of the Agreement A Addendum mooted this argument. *See* Marks Letter Exs. A-C ¶ 3(a) ("The provisions of this Arbitration Provision shall remain in force after the parties' contractual relationship ends.").

in Plaintiffs' claims are dismissed without prejudice. The Clerk of Court is directed to close the file.

SO ORDERED.

_____/s/_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
       March 1, 2016